## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROGER JOLLIS, individually and on
Behalf of all others similarly situated,

    Plaintiffs,

Case No.   2:24-cv-13328
Hon.
Lower Court Case No.  24-209942-CK

v.

AMICA MUTUAL INSURANCE COMPANY,

    Defendant.

---

### DEFENDANT AMICA MUTUAL INSURANCE COMPANY'S
### NOTICE OF REMOVAL TO FEDERAL COURT

Defendant Amica Mutual Insurance Company ("Amica"), by counsel, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, submits this Notice of Removal from Oakland County Circuit Court, State of Michigan, to the United States District Court for the Eastern District of Michigan, Southern Division, the judicial district in which this action is pending. In support of this Notice of Removal, Amica states as follows:

### I.  TIMELINESS OF REMOVAL

1. On September 24, 2024, Plaintiff Roger Jollis ("Jollis") filed a Complaint in Oakland County Circuit Court, which was assigned Case No. 2024-

209942-CK, and in which Amica is named as the sole defendant. (**Exhibit A**, Complaint).

2.  Jollis executed service of process on Amica on November 19, 2024, by personally serving the Summons and Complaint upon Amica's resident agent in Michigan, CSC-Lawyers Incorporation Service.

3.  This Notice of Removal is timely filed under 28 U.S.C. § 1446(b) because fewer than thirty (30) days have passed since Amica received "through service or otherwise … a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

## II.  PAPERS FROM REMOVED ACTION

4.  In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, and orders served upon…" Amica in the action pending in Oakland County Circuit Court are attached as **Exhibit B**.

## III.  JURISDICTIONAL BASIS FOR REMOVAL

5.  Amica is removing this case to federal court under the Class Action Fairness Act ("CAFA"), as codified at 28 U.S.C. § 1332(d).

6.  Pursuant to 28 U.S.C. § 1332(d)(1)(B), "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."

2

7. The Complaint filed in Oakland County Circuit Court is captioned as a "Class Action Complaint for Damages," seeks certification of the Class, and expressly states that "Plaintiff JOLLIS brings this action respectively seeking representation of a class pursuant to MCR 3.501." (**Exhibit A**, pp. 1, 13, ¶ 46). Accordingly, this action concerns a "class action" as defined under 28 U.S.C. § 1332(d)(1)(B).

8. 28 U.S.C. § 1332(d)(2) provides, in pertinent part: "[t]he district court shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]"

9. Further, 28 U.S.C. § 1332(d)(5) provides that "[p]aragraphs (2) through (4) shall not apply to any class action in which – … (B) the number of members of all proposed plaintiff classes in the aggregate is less than 100."

## IV. THE MINIMAL DIVERSITY REQUIREMENT IS SATISFIED

10. CAFA's minimal diversity requirement is satisfied when "[a]ny member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A).

11. Amica is a corporation formed under the laws of the State of Rhode Island with its principal place of business in Rhode Island.

3

60005299.1

12. As stated in the Complaint filed in Oakland County Circuit Court, "[a]t all times material hereto ... [Jollis] was domiciled in Bloomfield Hills, Michigan, and was a citizen of the State of Michigan." (**Exhibit A**, ¶ 11).

13. Accordingly, CAFA's minimal diversity requirement is satisfied as Jollis is a citizen of Michigan, while Amica is a citizen of Rhode Island.

### V. THE PUTATIVE CLASS HAS AT LEAST 100 MEMBERS

14. 28 U.S.C. § 1332(d)(2) does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

15. In this action, the putative class exceeds CAFA's requirement of at least 100 members.

16. Jollis purports to bring this action on behalf of:

> All Michigan insureds, under a policy issued by AMICA covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who, within the time-period of six years prior to the filing of this lawsuit through the date of the certification Order, submitted a first-party property damage claim determined by AMICA to constitute a covered total-loss claim and where the total-loss claim payment did not include all Purchasing Fees.

(**Exhibit A**, ¶ 47).

17. The Complaint filed in Oakland County Circuit Court further provides that "because [Amica] is a licensed motor vehicle insurer in the State

4

of Michigan and writes a significant amount of private-passenger physical-damage coverage premiums … the persons affected by [Amica's] unlawful practice consists of hundreds or thousands of individuals." (*Id.*, ¶ 48).

18. Accordingly, CAFA's requirement that the putative class exceeds at least 100 members is satisfied.

### VI. THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED

19. CAFA grants original jurisdiction to the United States district courts for class actions "in which the matter in controversy exceeds the sum or value of $5,000,000…" 28 U.S.C. § 1332(d)(2). When determining if the matter in controversy exceeds the $5,000,000 threshold, "the claims of the individual class members shall be aggregated …" 28 U.S.C. § 1332(d)(6).

20. The Supreme Court of the United States has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

21. Additionally, the United States Court of Appeals for the Sixth Circuit has explained that a defendant seeking removal does not face "the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Gafford v. Gen. Elec. Co.*, 997 F.2d

5

150, 159 (6th Cir. 1993), *abrogated on other grounds by* Hertz Corp. v. Friend, 559 U.S. 77, 91 (2010). Instead, a defendant needs only to show "by a preponderance of the evidence, that the amount in controversy … ha[s] been met." *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 571 (6th Cir. 2001).

22. In this action, the Complaint filed in Oakland County Circuit Court does not demand a specific sum. Instead, the Complaint alleges generally that from 2018 to 2024, all Michigan insureds covered under a policy issued by AMICA suffered damages as a result of "AMICA's refusal to pay purchasing fees and costs such as Sales Tax and Regulatory Fees (the 'Purchasing Fees') for total-loss vehicles." (**Exhibit 1**, ¶ 7).

23. The Complaint further provides that "[i]n Michigan, a person registering a motor vehicle is required to pay, in addition to state sales tax …, additional state, county, license fees and tag fees ("Regulatory Fees")." (*Id.*, ¶ 6).

24. However, following a total-loss vehicle claim, the Complaint alleges that "Amica has a standard and ongoing practice in Michigan of failing and/or refusing to pay the Purchasing Fees to Michigan total loss insureds." (*Id.*, ¶ 8).

25. The Complaint asserts a breach of contract claim. In support, it alleges that Amica's "payment of merely the Insured Vehicle's base value plus some of the sales taxes without full payment of the Purchasing Fees legally

6

owed" constitutes a breach of Amica's standard form auto policy, which requires Amica to pay the insured Actual Cash Value ("ACV") on total-loss vehicle claims, - including "applicable taxes, license fees and other fees incident to transfer of ownership of a comparable vehicle." (*Id.*, ¶¶ 25; 5 – 7).

26. Therefore, the Complaint demands an award of compensatory damages as it is alleged that Amica's total-loss insureds "are owed Purchasing Fees which include sales tax, title transfer fees, registration fees, and plate transfer fees." Further, the Complaint demands all other damages established by proof, attorneys' fees and costs of suit incurred herein, as well as pre and post judgment interests. (*Id.*, p. 13, Prayer for Relief).

27. Based on the foregoing, the alleged damages placed at issue in the Complaint concern the Purchasing Fees Amica allegedly failed to provide to total-loss insureds, including additional sales tax, registration fees, title transfer fees, and plate transfer fees. For purposes of establishing that the amount in controversy exceeds CAFA's $5,000,000 jurisdictional threshold, each damage placed at issue in the Complaint is addressed herein, in turn.

28. First, § 205.52 of Michigan's General Sales Tax Act authorizes the collection of sales tax at 6% of the full purchase price of the vehicle at the time of sale. Although the Complaint alleges that Amica issued payment for "some of

the sales taxes," the Complaint also asserts that total-loss insureds are owed additional sales tax. (*Id.*, ¶¶ 25; 42).

29. However, given that the amount of sales tax owed will vary depending on the purchase price of the vehicle, it is necessary to consider the following example, which concerns the average purchase price of new and used vehicles from 2019 to 2024 according to a study undertaken by Edmunds.com Inc.:



Edmunds.com Inc., *Average Price Gap Between New and Used Vehicles Surpasses $20K for the First Time Ever in Q3*, (October 29, 2024), https://www.edmunds.com/car-news/used-car-report-q3-2024.html.

8

60005299.1

30.     As depicted above, in January of 2021, the average price for a new motor vehicle was around $40,000. Accordingly, at that time, the purchaser of a new motor vehicle would owe approximately $2,400 in sales tax in Michigan.

31.     Secondly, § 257.801 of the Michigan Vehicle Code governs vehicle registration fees. However, as that statute makes clear, vehicle registration fees are based on a formula that considers the vehicle type, make and model year, and previous ownership.

32.     Given that the amount of registration fees owed in Michigan varies extensively based on the above-mentioned factors, it is necessary to turn to the Michigan Department of State's registration fee calculator, which is accessible at https://dsvsesvc.sos.state.mi.us/TAP/_/#1.

33.     As depicted below, in 2024, the calculated registration fees for a 4-door car, made in 2021, with a Manufacturer's Suggested Retail Price ("MSRP") of $40,000 is $286.00.

**Calculate Registration Fees**

**Tell us about your vehicle**

Select your vehicle type: Car/Mini-Van/SUV
Select the body style: 4 Door
Select how you will use your vehicle: Regular/Non-Commercial

Select your fuel type: Gas

Enter the vehicle model year: 2021
Enter the vehicle MSRP: 40,000
How do I find my MSRP?

Is this vehicle being titled for the first time (no previous owner)?
Yes    No

```
Fees
MSRP Based Reg Fee                                                    286.00
                                                                      286.00
```

34. Even further, § 257.801(7) provides "the registration fee imposed under this section for a vehicle using 4 or more tires is increased as follows:"

> (a) If the vehicle is a plug-in hybrid electric vehicle, the registration fee for that vehicle is increased by $30.00 for a vehicle with an empty weight of 8,000 pounds or less, and $100.00 for a vehicle with an empty weight of more than 8,000 pounds …
>
> (b) If the vehicle is an electric vehicle, the registration fee for that vehicle is increased by $100.00 for a vehicle with an empty weight of 8,000 pounds or less, and $200.00 for a vehicle with an empty weight of more than 8,000 pounds…

35. Accordingly, there exists the possibility that some of the putative class members were subjected to additional registration fees when registering a plug-in hybrid electric vehicle and/or an electric vehicle with the State of Michigan.

36. Lastly, regarding the title transfer fee and plate transfer fee, the Michigan Department of State's publication on "Title transfer and vehicle registration" provides that Michigan imposes a $15 title transfer fee, in addition to a plate transfer fee ranging from $10 to $15. *See* Michigan Department of State, *Title transfer and vehicle registration*, https://www.michigan.gov/sos/all-services/title-transfer-and-vehicle-registration.

10

60005299.1

37. In summation, based on the foregoing, it is undeniably plausible that each putative class member may seek an award of $2,716 in compensatory damages, based on Amica's alleged failure to provide payment for all Purchasing Fees associated with registering a vehicle in Michigan ($2,400 in sales tax, $286+ in registration fees with the possibility of additional fees for a plug-in hybrid electric vehicle and/or an electric vehicle + $15 in title transfer fees + $15 in plate transfer fees).

38. Therefore, CAFA's $5,000,000 jurisdictional threshold is satisfied if the putative class includes at least 1,841 members ($2,716 x. 1,841 = $5,000,156).

39. Given that the Complaint alleges "because [Amica] is a licensed motor vehicle insurer in the State of Michigan and writes a significant amount of private-passenger physical-damage coverage premiums … the persons affected by [Amica's] unlawful practice consists of hundreds or thousands of individuals," it is plausible that the putative class includes at least 1,841 members. (**Exhibit A**, ¶ 48).

40. Accordingly, this action places in controversy monetary relief and damages that plausibly exceed CAFA's $5,000,000 jurisdictional threshold.

41. Hence, this Court has original jurisdiction over this action pursuant to the CAFA because (1) there exists minimal diversity, (2) the putative class includes

11

at least 100 members, and (3) the amount in controversy exceeds $5,000,000. Amica has satisfied the requirements for removal under CAFA.

## VII.  NO RESPONSIVE PLEADING HAS BEEN FILED

42.    Amica has not filed any responsive pleading to the Complaint filed in Oakland County Circuit Court.

## VIII.  NOTICE TO JOLLIS AND THE STATE COURT

43.    As required by 28 U.S.C. § 1446(b), this Notice of Removal, by means of the Notice of Filing Removal filed in the state court action pending in Oakland County Circuit Court and attached hereto as **Exhibit C**, is providing notice to Jollis and the Oakland County Clerk of Court of (a) this Notice of Removal; (b) the fact that this action is to be docketed in this Court; and (c) that this Court shall hereafter be entitled to grant all relief to Amica as is proper under the circumstances.

## IX.  NON-WAIVER OF DEFENSES

44.    By removing this action from the Oakland County Circuit Court, Amica does not waive any defenses available to it, nor does Amica admit any of the allegations stated in Jollis' Complaint.

45.    Amica reserves the right to further amend or supplement this Notice of Removal if it becomes necessary to do so.

WHEREFORE, Amica respectfully requests that this action proceed to this Court as a removed claim or cause of action under 28 U.S.C. §§ 1332, 1441, and 1446.

Respectfully submitted,

*/s/ Charles W. Browning*
Charles W. Browning (P32978)
Patrick C. Lannen (P73031)
Mitchell McIntyre (P76613)
Nicholas T. Badalamenti (P86264)
PLUNKETT COONEY
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI  48304
(248) 901-4000
CBrowning@plunkettcooney.com
***Attorneys for Defendant Amica Mutual Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that on this day, December 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ Nicholas T. Badalamenti*

13