UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER JOLLIS, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

AMICA MUTUAL INSURANCE COMPANY,

        Defendant.
_____/

Case No. 2:24-cr-13328

Honorable Susan K. DeClercq
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF No. 2) AND DISMISSING PLAINTIFF'S COMPLAINT (ECF No. 1-2)**

In September 2024, Plaintiff Roger Jollis brought a class action complaint against Defendant Amica Mutual Insurance Company ("Amica") in Oakland County Circuit Court. ECF No. 1-2. Amica then removed the matter to federal court. ECF No. 1. The complaint alleges that Amica breached its insurance contract with Jollis and similarly situated insureds by issuing "actual cash value" payments following the loss of a vehicle that did not include "purchasing fees," including license and tag fees. ECF No. 1-2 at PageID.17. Soon after removing the case to federal court, Amica moved to dismiss Jollis's complaint under Civil Rule 12(b)(6). ECF No. 2. In short, Amica argues that Sixth Circuit precedent precludes any reasonable factfinder from concluding that Amica was contractually obligated to include

purchasing fees in its payments to insureds. ECF No. 2 at PageID.134. As explained below, this Court must dismiss Jollis's complaint in accordance with that precedent.

## I. BACKGROUND

In February 2019, Jollis was involved in an accident while driving his 2011 Jeep that he insured under a policy issued by Amica. ECF No. 1-2 at PageID.19–20. So, he filed a property damage claim with Amica. *Id.* at PageID.20. Amica then determined that the Jeep was a "total loss with a 'Base Vehicle Value' of $18,452 and a[n] 'Adjusted Vehicle Value' of $19,492." *Id.* After adding sales tax to the adjusted vehicle value, Amica paid Jollis $20,661.52 for his claim. *Id.*

Jollis did not dispute this valuation, but he did dispute the sufficiency of that payment and ultimately sued Amica for breaching its insurance contract. According to Jollis's complaint, Amica "failed and refused to pay all of the [p]urchasing [f]ees applicable" to the total loss claim. *Id.* at PageID.20. That failure and refusal, Jollis alleges, was pursuant to Amica's "standard and widespread practice of failing and/or refusing to pay [ ] purchasing fees to its first-party total loss insureds in Michigan" despite language in Amica's insurance contract providing otherwise. *Id.*

Jollis's insurance contract with Amica provides that, following a loss, Amica "will pay for direct and accidental loss to [the] covered auto …." ECF No. 1-3 at Page.ID 84. The policy further provides that Amica's liability for the loss—that is, the coverage amount—is limited as stated, in pertinent part, here:

- 2 -

> **Limit of Liability**
> **A.** [Amica's] limit of liability for loss will be the lesser of the:
> 1. Actual cash value of the stolen or damaged property; or
> 2. Amount necessary to repair or replace the property with other property of like kind and quality.
> …
> **B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.
> **C.** If a repair or replacement results in better than like kind or quality, [Amica] will not pay for the amount of the betterment.

ECF No. 1-3 at PageID.87.

Notably, both parties agree that the policy does not expressly define the term "actual cash value." *See* ECF Nos. 2 at PageID.158; 5 at PageID.185. As Jollis alleges in his complaint, the policy does, however, incorporate Michigan state law. ECF No. 1-2 at PageID.23. And Michigan, as Jollis notes in his response to the motion to dismiss, defines "actual cash value" as "replacement cost less depreciation" in at least some contexts. ECF No. 5 at Page.ID 184 (citing *Smith v. Mich. Basic Prop. Ins. Ass'n,* 490 N.W.2d 864, 870 n.28 (Mich. 1992)).

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than

labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."). Otherwise, the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

### III. DISCUSSION

The parties' dispute ultimately turns on whether the contractual language regarding "actual cash value" can reasonably be read to include all "purchasing fees." Put differently, the question before this Court is whether "actual cash value,"

as used in the insurance policy here, unambiguously excludes purchasing fees. Jollis alleges a single breach of contract count against Amica for failure to pay said purchasing fees. *See* ECF No. 1-2 at PageID.26–27. Amica seeks dismissal of that count. *See* ECF No. 2. For the reasons discussed below, this Court agrees with Amica that the contract cannot read "actual cash value" to include purchasing fees. Thus, the complaint will be dismissed.

In support of its position, Amica points to the Sixth Circuit's decision in *Wilkerson v. American Family Insurance Co.*, 997 F.3d 666 (6th Cir. 2021). There, the Sixth Circuit grappled with the meaning of "actual cash value" in a car insurance policy that was, in all relevant respects, identical to the one at issue here. *Wilkerson*, 997 F.3d at 667–68. Like the policy at issue here, the policy in *Wilkerson* limited the insurer's liability for loss to the lesser of:

> a). The actual cash value of the stolen or damaged property; or b). The amount necessary to repair or replace the property. The amount necessary to repair or replace the property does not include any difference in the market value of [the insured vehicle] immediately prior to the **loss** and the market value of [the insured vehicle] after repairs from the **loss** are completed.

*Wilkerson v. Am. Fam. Ins. Co.*, No. 1:19CV2425, 2020 WL 5891971, at *1 (N.D. Ohio Oct. 5, 2020) (dismissing complaint), *aff'd*, 997 F.3d 666 (6th Cir. 2021). And, like Jollis, the plaintiff in *Wilkerson* argued that "actual cash value" included purchasing fees, *i.e.*, "sales taxes and fees that a party typically must incur when buying a replacement car." 997 F.3d at 668. Applying Ohio law, the Sixth Circuit

- 5 -

concluded that "actual cash value" unambiguously excluded purchasing fees. *Id.* at 671.

In reaching that conclusion, the Sixth Circuit employed standard principles to interpret the insurance contract under Ohio law, starting with the plain meaning of of "actual cash value" because it was not a defined term in the insurance policy. 997 F.3d at 668. The Sixth Circuit noted that the term "value" ordinarily has a plain meaning of "worth" that would exclude the disputed purchasing fees. *Id.* at 669 (citing *Oxford English Dictionary* (online ed.) (last visited May 3, 2021)). But that was not the end of the analysis. Next, the Sixth Circuit looked to the contract's context to consider, *inter alia*, whether the phrase had "developed a technical usage over time." *Id.* The Sixth Circuit observed that the term "actual cash value" had indeed become a legal term of art that carried two meanings: one tracked the definition of "value" noted above, and the other meant "replacement cost minus normal depreciation." *Id.* at 669–70. Therefore, the Sixth Circuit had to make a "choice between these dueling definitions." *Id.* at 670.

To resolve the issue presented by the competing meanings, the Sixth Circuit turned first to state law to see if Ohio courts had adopted a default definition. *Id.* Neither the Ohio Supreme Court nor the Ohio appellate courts had done so. *Id.* (collecting cases and observing that Ohio courts "have suggested that the phrase can take either definition depending on the contract's language.").

Without a default rule from the Ohio legislature or courts, the Sixth Circuit turned next to a consideration of the contract "as a whole." *Id.* (applying Ohio state law principles governing contract interpretation). At this stage in the analysis, the Sixth Circuit observed that reading "actual cash value" to mean "replacement cost less depreciation" would result in a redundancy, effectively nullifying part of the contract. *Id.* at 670–71. Specifically, the Sixth Circuit looked to the "Limits of Liability" section of the policy, noting that the second clause (*i.e.*, part "b.") would be meaningless if the first clause meant "replacement cost minus depreciation." *Id.* Afterall, "[w]hy would [the insurer] limit its liability to the lesser of 'replacement cost minus depreciation' or 'the amount necessary to … replace the property'?" *Id.* at 671. The Sixth Circuit also reasoned that other provisions in the policy counseled against the plaintiff's argument. *Id.* For example, the policy indicated that "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value." *Id.* (observing that "[t]his provision would serve no purpose if actual cash value *already* meant 'replacement costs minus normal depreciation.'").

Jollis provides a three-part response to Amica's argument. First, Jollis contends that *Wilkerson* is not binding on this Court because it was wrongly decided. ECF No. 5 at PageID.176, 187–88. Second, Jollis contends that, even if this Court takes "actual cash value" to mean "market value," as in *Wilkerson*, this Court should interpret "market value" to mean replacement cost less depreciation, a definition that

would include the fees at issue. *Id.* at PageID.192–93. Third, Jollis argues that Michigan's definition of "actual cash value"—that is, "replacement cost less depreciation"—should fill the void left by Amica's failure to define the term. *Id.* at. PageID.184–85, 191–93.

Jollis's first and second arguments are nonstarters. With respect to the first, the principle of vertical *stare decisis* means that it is not this Court's place to determine whether a higher court's ruling was rightly or wrongly reached. *See United States v. Matos*, No. 13-cr-98, 2014 WL 1922866 (W.D. Ky. May 14, 2014) ("Ordinarily, a district court is bound to follow the holding of a prior decision of the Court of Appeals for the circuit in which the district court is located until that binding precedent is expressly overruled." (quotation modified)). And the second argument is squarely precluded by the Sixth Circuit's decision in *Wilkerson* where the circuit reasoned that "market value" (*i.e.*, "worth") as determined through standard contract interpretation is inconsistent with "replacement cost less depreciation." *See* 997 F.3d at 668–69.

Turning to Jollis's third argument, it does not actually appear that Michigan law provides a singular default rule that defines "actual cash value" as "replacement cost less depreciation." Although Jollis is correct that Michigan law sometimes provides a definition of "actual cash value," as "the cost of replacing damaged or destroyed property with comparable new property, minus depreciation and

obsolescence," this authority[1] is more limited than Jollis would have this Court believe. *See, e.g.*, Mich. Comp. Laws § 500.1605(a) (applying in the context of creditor-placed insurance regarding "personal, family, or household purposes."). Indeed, the Michigan court decisions that Jollis cites do not provide any useful guidance on this issue. For example, in *Salesin*, the Michigan Court of Appeals did not reason that "actual cash value," a term that was at issue in that case, meant "replacement cost less depreciation." Instead, the Michigan Court of Appeals held only that the term included a contractor's overhead and profit where the policy provided for a "full replacement." 581 N.W.2d at 787 (looking for guidance to § 2826 of the Insurance Code of 1956). The Michigan Supreme Court's decision in *Smith* is similarly unhelpful. In a footnote, that court did indeed reason that "'[a]ctual cash value' means replacement cost less depreciation." 490 N.W.2d at 870 n.28. But, without citing to any authority, it is unclear whether the Michigan Supreme Court derived that meaning from the home insurance policy itself (*e.g.,* a clause defining

---

[1] In *Salesin*, a dispute arose when an insurer deducted a contractor's overhead and profit when paying "actual cash value" for an insured's water damage loss suffered from a malfunctioning washing machine. *Salesin v. State Farm Fire & Cas. Co.,* 581 N.W.2d 781, 790 (Mich. Ct. App. 1998) (discussing, but not deciding, definition of "actual cash value"); *see also Haley v. Farm. Bur. Ins. Co.*, No. 302158, 2013 WL 4525924 (Mich. Ct. App. Aug. 27, 2013) (unpublished) (same). In *Smith*, the Michigan Supreme Court reasoned in a footnote that "'Replacement cost' means a reasonable estimate of the cost of replacing on the market an item of personal property. 'Actual cash value' means replacement cost less depreciation." *Smith v. Mich. Basic Prop. Ins. Ass'n*, 490 N.W.2d 864, 870 n.28 (Mich. 1992).

the term) or from a principle of state law. Lastly, the Michigan Court of Appeals' unpublished decision in *Haley* is inapposite because that case involved a challenge regarding the proof of damages (i.e., one to the factual basis for the insurer's calculation of "actual cash value" rather than one concerning the meaning of "actual cash value" in the first place). 2013 WL 4525924, at *9 ("We conclude that there were sufficient facts and data to support Lappin's opinion regarding the values of the items listed in the contents inventory.").

In contrast, Michigan law elsewhere provides that "actual cash value" means "the retail dollar of a vehicle." Mich. Comp. Laws § 257.217c(27); *see also id.* at § 257.57(e) (noting that in the context of scrap vehicles "'actual cash value' means the retail dollar value of a vehicle"); *id.* at § 257.12a (same regarding distressed vehicles). To be sure, the definition of "actual cash value" set forth in § 257.217c(27) is expressly limited to Section 217c of the Michigan Vehicle Code. Yet this appears to be the most relevant Michigan statute as Section 217c deals with, *inter alia*, "powers and duties of insurance companies and dealers." *Id.* Thus, despite Jollis's argument, Michigan law does not provide a singular default rule that defines "actual cash value" as "replacement cost less depreciation."

Without a singular default definition provided by state law, this Court finds itself in the same circumstances that the Sixth Circuit faced when deciding *Wilkerson*. Therefore, this Court will follow the reasoning applied in that decision.

To start, recall that the Sixth Circuit held that the term "actual cash value" has "developed a technical usage over time" with only two meanings: one tracking "market value" and another being "replacement cost minus normal depreciation." *Wilkerson*, 997 F.3d at 669–70. Jollis argues that, at the very least, the contract is ambiguous as to which of those two meanings applies here. To settle whether such an ambiguity exists, this Court will—as in *Wilkerson*—employ the principles of contract interpretation set forth by state law.

Michigan law—like Ohio law—directs courts "to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement." *Dobbelaere v. Auto Owners Ins. Co.*, 740 N.W.2d 503, 529 (Mich. Ct. App. 2007). In its reply brief, Amica cites that shared principle and urges this Court to consider the resulting redundancies and inconsistencies that would arise from defining "actual cash value" to mean "replacement cost less depreciation" here. ECF No. 6 at PageID.232.

If "actual cash value" is read to mean "replacement cost less depreciation," then two inconsistencies would result here. First, as in *Wilkerson*, "replacement cost less depreciation" would nullify the second part of the "Limit of Liability" section. *See* ECF No. 1-3 at PageID.87. And second, again as in *Wilkerson*, the insurance policy at issue here provides for an adjustment for depreciation. *Compare Wilkerson*, 997 F.3d at 671 (providing that "[a]n adjustment for depreciation and physical

condition will be made in determining actual cash value") *with* ECF No. 1-3 at PageID.87 ("**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.").

In *Wilkerson*, the Sixth Circuit reasoned that those two inconsistencies ruled out the possibility that identical policy language could mean "replacement cost minus normal depreciation." 997 F.3d at 671. Therefore, because the contract here is identical in all relevant respects to the contract at issue in *Wilkerson*, the Sixth Circuit's reasoning yields the same result in this case: "actual cash value" as used in the Amica insurance policy unambiguously means "market value." 997 F.3d at 671 ("[T]he phrase "actual cash value" is "clear and unambiguous" when interpreted in the full context of American Family's policy: It refers to the market value of the damaged car."). And the Sixth Circuit held that "market value" excluded purchasing fees in this context. *Id.* at 669–70 (citing *Pieczonka v. Progressive Select Ins. Co.*, 840 F. App'x 856, 858 (6th Cir. 2021)). Thus, "actual cash value" as used in the contract at issue here unambiguously excludes the disputed license and tag fees. *See id.* at 671 ("['Actual cash value'] thus unambiguously excludes the taxes and fees that Wilkerson seeks in this suit.").[2] For these reasons, as a matter of law, Amica did

---

[2] Although Jollis asks this Court to consider Amica's website—which explains that the term "actual cash value" is the "[c]urrent value of property…. often calculated by subtracting depreciation from the replacement cost"—as support for Jollis's proposed reading, *id.* at PageID.183 (citing ECF No. 5-2 at PageID.203), this

not breach its contract with Jollis by limiting its payment in the manner that Jollis alleges.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 2, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1-2, is **DISMISSED.**

---

conclusion precludes consideration of Amica's webpage, ECF No. 5-2 at PageID.203. *See Sault Ste. Marie tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 812 (6th Cir. 2007) ("Only where a contract contains ambiguous terms will consideration of outside evidence be necessary. Thus, the admissibility of extrinsic evidence is contingent upon 'some finding of contractual ambiguity.'"); *see also Wonderland Shopping Ctr. Venture Ltd P'ship V. CDC Mortg. Cap., Inc.*, 274 F.3d 1085, 1095 (6th Cir. 2001) ("Even though extrinsic evidence of contemporaneous or prior negotiations is admissible to show the parties did not intend the written agreement to be final and complete, an integration clause in a written contract conclusively establishes that the parties intended the written contract to be the complete expression of their agreement."); *accord* ECF No. 1-3 at PageID.88 (policy's integration clause reading "[t]his policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us."). And, even if the webpage were considered, this Court would nevertheless reach the same conclusion because the webpage provides no additional insight into the parties' intent. *See Wonderland*, 274 F.3d at 1092 ("A court's primary responsibility in construing a Michigan contract is to ascertain and enforce the intent of the parties." (collecting cases)). After all, the webpage itself explains "actual cash value" in terms of *both* "market value" ("current value of the property," which would naturally exclude license and tag fees if Jollis were to sell the Jeep himself) on the one hand and "replacement cost less depreciation" ("replacement cost – depreciation = actual cash value") on the other.

**This is a final order that closes the above-captioned case.**

/s/*Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 17, 2025